FILED & JUDGMENT ENTERED
Steven T. Salata

February 5 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

In re:                              )
                                    )
**DIANA HOUCK,**                    )          Chapter 13
                                    )          Case No. 11-51513
          Debtor.                   )
_____ )
                                    )
**DIANA HOUCK,**                    )
                                    )
          Plaintiff,                )
                                    )          Adversary Proceeding
v.                                  )          No. 15-5028
                                    )
**LIFESTORE BANK, GRID FINANCIAL**  )
**SERVICES, INC., and SUBSTITUTE**  )
**TRUSTEE SERVICES, INC.,**         )
                                    )
          Defendants.               )
_____ )

**ORDER DETERMINING THE STATUS OF THIS ADVERSARY PROCEEDING, EXAMINING THIS COURT'S SUBJECT MATTER JURISDICTION, RECOMMENDING WITHDRAWAL OF THE REFERENCE, AND SETTING STATUS HEARING**

**THIS MATTER** is before the court on its November 3, 2015 Order Requiring Briefing on Questions of Status, Jurisdiction, and Preemption ("Briefing Order"). In response to the Briefing Order, the Plaintiff filed a Preliminary Memorandum of Law on November 24, 2015; a Memorandum of Law on January 14, 2016; and

a Memorandum of Supplemental Authority on June 2, 2017.[1]    All
three Defendants also filed briefs in response to the Briefing
Order: Substitute Trustee Services, Inc. ("STS") filed a
Memorandum Regarding Order Requiring Briefing on Questions of
Status, Jurisdiction and Preemption on January 14, 2016; Grid
Financial Services, Inc. ("Grid") filed Defendant Grid Financial
Services Inc.'s Brief in Response to the Court's Order Requiring
Briefing on Questions of Status, Jurisdiction, and Preemption on
January 14, 2016 and a "corrected" version of the same brief on
January 15, 2016; and Lifestore Bank ("Lifestore") filed
Defendant Lifestore Bank, F.S.A.'s Memorandum Regarding Order
Requiring Briefing on Questions of Status, Jurisdiction, and
Preemption on January 15, 2016.

As further explained below, this adversary proceeding
presents extremely complicated procedural and jurisdictional
questions. Accordingly, after receiving this lawsuit from the
United States District Court for the Western District of North
Carolina ("District Court") pursuant to the September 22, 2015
Order of Referral to the Bankruptcy Court ("Referral Order") and
holding a status hearing, this court decided that it should
determine the status of the lawsuit and its subject matter
jurisdiction to decide the Plaintiff's claims prior to

---

[1] The Plaintiff also filed a Memorandum of Supplemental Authority and Motion
for Status Hearing on November 21, 2017. The court did not consider the
Memorandum of Supplemental Authority and Motion for Status Hearing in
relation to this order.

proceeding with the litigation.[2]  After reviewing the procedural history of this adversary proceeding, the court determines that the Plaintiff's appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") did not affect the District Court's orders dismissing the claims against Grid and Lifestore from this lawsuit and that STS is the only remaining defendant.  Similarly, as the Plaintiff concedes, her appeal to the Fourth Circuit did not affect the District Court's order dismissing the Plaintiff's emotional distress claims.  After the appeal to the Fourth Circuit, this lawsuit now includes only the Plaintiff's claim pursuant 11 U.S.C. § 362(k) against STS and her state law claims against STS other than the emotional distress claims.

After determining the status of this adversary proceeding, the court examines its subject matter jurisdiction to hear the Plaintiff's remaining claims.  The court concludes that it has jurisdiction to hear the § 362(k) claim, but it cannot hear the state law claims because there is no longer a bankruptcy estate that might be augmented.  Because this court does not have jurisdiction to hear all of the claims, the court recommends

---

[2] As indicated by the title of the Briefing Order, the court also asked the parties to brief the issue of whether 11 U.S.C. § 362 preempted the Plaintiff's state law claims.  The Briefing Order notes that preemption is not an issue of procedure or jurisdiction and explains that the court included preemption in the Briefing Order because the parties raised the issue at the October 28, 2015 status hearing.  Based on the resolution of the jurisdictional issues pursuant to this order, however, it is neither necessary nor appropriate for this court to further explore the issue of preemption.  Therefore, this order does not include a discussion of preemption and expresses no opinion on the issue.

that the District Court withdraw the reference so all of the claims might be heard together.   If the District Court declines to withdraw the reference, this court will dismiss the state law claims without prejudice and proceed to hear the § 362 claim against STS.

## PROCEDURAL HISTORY

Prior to this lawsuit, the Plaintiff filed two pro se Chapter 13 bankruptcy cases in this court.   She filed her first case, case no. 11-51141, on September 12, 2011, and the court dismissed case no. 11-51141 on September 30, 2011 because the Plaintiff failed to timely file the schedules, statements, and other documents required of all Chapter 13 debtors.   The Plaintiff commenced her second Chapter 13 case, case no. 11-51513, on December 16, 2011.   This court dismissed case no. 11-51513 on December 21, 2011 because the Plaintiff failed to satisfy the credit counseling requirement of 11 U.S.C. § 109(h).[3]

This lawsuit began in the normal fashion a year and a half later but eventually took a less traditional journey through the federal court system.   Diana Houck commenced the lawsuit by filing a complaint in the District Court on April 26, 2013.   The complaint, as subsequently amended,[4] alleges that the Defendants fraudulently engaged in a conspiracy to cause the Plaintiff to

---

[3] A foreclosure sale of the Plaintiff's real property occurred on December 20, 2011 during the (brief) pendency of the second bankruptcy case.

[4] The amended complaint, among other things, added Steven G. Tate, Chapter 13 Trustee as an additional plaintiff.

4

default on her mortgage payments in violation of several state laws and then foreclosed on her property in violation of the Bankruptcy Code's automatic stay. Specifically, in addition to the federal claim for violation of the automatic stay pursuant to 11 U.S.C. § 362, the complaint alleges state law claims for unfair and deceptive trade practices pursuant to North Carolina General Statute § 75-1.1(a), debt collection by unconscionable means pursuant to North Carolina General Statute § 75-55, breach of contract, actual fraud, constructive fraud, emotional distress (intentional infliction of emotional distress and negligent infliction of emotional distress), and civil conspiracy. The parties filed a Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge on July 12, 2013, and the District Court assigned the lawsuit to the Honorable David S. Cayer.

On October 1, 2013, Judge Cayer entered a Memorandum and Order ("October 1 Order") dismissing all of the claims against STS. The October 1 Order concludes that the Plaintiff failed to state a claim against STS for violation of the automatic stay because her complaint did not allege that STS had notice of her bankruptcy case and that STS could not have willfully violated the stay if it did not have notice of the bankruptcy case. The October 1 Order also concludes that the Plaintiff's state law claims against STS failed because STS did not violate the

automatic stay and dismissed the complaint with prejudice as to STS. The Plaintiff filed a Notice of Appeal of the October 1 Order on October 28, 2013.

During the pendency of the Plaintiff's appeal of the October 1 Order to the Fourth Circuit, Judge Cayer entered two more dismissal orders. On January 15, 2014, Judge Cayer entered a Memorandum and Order ("January 15 Order") that dismissed the emotional distress claims against Lifestore and Grid as well as the § 362(k), § 75-55, and breach of contract claims against Grid. The January 15 Order concludes that Grid, like STS, did not have notice of the Plaintiff's bankruptcy case, so Grid also could not be responsible for a willful stay violation. Judge Cayer held that the § 75-55 and breach of contract claims against Grid also failed due to the lack of notice of the bankruptcy stay. In addition, the January 15 Order decided that the complaint did not assert sufficient factual allegations to support the emotional distress claims. The Plaintiff did not appeal the January 15 Order.

On February 20, 2014, Judge Cayer entered another Memorandum and Order ("February 20 Order") after Grid filed a motion to dismiss for lack of subject matter jurisdiction. The February 20 Order mentions Grid's argument that § 362 does not create a private cause of action outside of the bankruptcy court for stay violations, notes that this court previously dismissed

the Plaintiff's second bankruptcy case, and decides that
dismissal of her § 362 claim is "the appropriate remedy." After
dismissing the § 362 claim, Judge Cayer declined to exercise
jurisdiction over the remaining state law claims and dismissed
the entire complaint without prejudice.  The Clerk of the
District Court entered a judgment in accordance with the
February 20 Order on the same date.  After the Plaintiff filed a
Motion for Reconsideration on February 27, 2014, Judge Cayer
entered a brief docket order denying the Motion for
Reconsideration on the same date.  The Plaintiff did not appeal
the February 20 Order, the entry of the judgment, or the denial
of her February 27, 2014 Motion for Reconsideration.

Several months later, on August 27, 2014, the Fourth
Circuit entered an unpublished opinion dismissing the
Plaintiff's appeal of the October 1 Order for lack of
jurisdiction because the October 1 Order was neither a final
order nor an appealable interlocutory order.  A footnote to the
unpublished opinion noted the District Court's two subsequent
dismissal orders and that the jurisdictional defect to the
appeal could be cured by the doctrine of cumulative finality;
however, the Fourth Circuit found that a final order had not yet
been entered by the District Court because it believed that "at
least some claims" against Lifestore were still pending.  The
Plaintiff then filed a Motion to Reopen Case in the District

7

Court on August 29, 2014 and, on September 15, 2014, again asked the District Court to reconsider its February 20 Order. Judge Cayer denied both of the Plaintiff's motions on October 14, 2014. The Plaintiff did not appeal the District Court's October 14, 2014 order.

Instead, the Plaintiff returned to the Fourth Circuit and filed a motion for clarification of its August 27, 2014 opinion. On December 17, 2014, the Fourth Circuit recalled its mandate and granted panel rehearing of the Plaintiff's appeal of the October 1 Order. The Plaintiff, STS, and a court-assigned amicus counsel[5] participated in the Fourth Circuit rehearing; Grid and Lifestore did not. After rehearing this matter, the Fourth Circuit entered an opinion on July 1, 2015 that vacated the judgment of the District Court, reversed the October 1 Order, and remanded the case for further proceedings. Houck v. Substitute Tr. Servs, Inc., 791 F.3d 473, 487 (4th Cir. 2015) ("July 1 Opinion").

In the July 1 Opinion, the Fourth Circuit panel reexamined the District Court's February 20 Order and determined that it was in fact a final order that disposed of the entire case. Id. at 478—79. Next, the panel determined that it could review the October 1 Order pursuant to the doctrine of cumulative finality.

---

[5] The Fourth Circuit appointed amicus counsel to defend Judge Cayer's ruling in the February 20 Order that the District Court did not have subject matter jurisdiction to hear the stay violation claim because both the Plaintiff and STS believed the District Court could hear it. Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 480 (4th Cir. 2015).

Id. at 479.   As noted in the July 1 Opinion, cumulative finality allows appellate review of an otherwise non-appealable interlocutory order where the required finality is established after the appeal is taken but prior to the appellate court's consideration of the matter.   Id. (noting that cumulative finality is a " 'practical approach to finality' " employed when " 'all joint claims or all multiple parties are dismissed prior to the consideration of the appeal' " (quoting Equip. Fin. Grp., Inc. v. Traverse Comput. Brokers, 973 F.2d 345, 347 (4th Cir. 1992))); see also Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964) (noting that "a decision 'final' within the meaning of [28 U.S.C.] § 1291 does not necessarily mean the last order possible to be made in a case" (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545 (1949))).

After determining that it had appellate jurisdiction to hear the appeal of the October 1 Order, the panel turned to another jurisdictional issue—subject matter jurisdiction.   While the February 20 Order was not on appeal, if Judge Cayer's determination in that order that the District Court did not have subject matter jurisdiction was correct, the District Court would not have had jurisdiction to grant STS's motion in the October 1 Order, id. at 479—80.   The panel interpreted the February 20 Order as concluding that stay violation claims could only be brought in bankruptcy courts and could not be brought in

district courts.  *Id.* at 480.  The panel noted that the case
that Judge Cayer relied on in his ruling, Scott v. Wells Fargo
Home Mortg., Inc., 326 F. Supp. 2d 709, 719 (E.D. Va. 2003),
*aff'd per curiam sub nom.* Scott v. Wells Fargo & Co., 67 F.
App'x 238 (4th Cir. 2003), relied on cases interpreting a
previous version of § 362.  Houck, 791 F.3d at 480.  In the
course of describing the current version of § 362 and
determining that the Bankruptcy Amendments and Federal Judgeship
Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (codified in
scattered sections of 11 and 28 U.S.C.) ("1984 Act") created "a
private cause of action for the willful violation of a stay"
without specifying the court(s) with jurisdiction over the
particular cause of action, the panel also examined bankruptcy
jurisdiction generally.  *Id.* at 481.  The panel noted that the
1984 Act did not "give a bankruptcy court jurisdiction *to the
exclusion* of a district court" in any situation.  *Id.*  The
District Court's standing referral order sent all bankruptcy
matters to this court pursuant to 28 U.S.C. § 157(a), but
" '[t]hat allocation does not implicate questions of subject
matter jurisdiction,' " *id.* at 482 (quoting Stern v. Marshall,
564 U.S. 462, 131 S. Ct. 2594, 2607 (2011)), so "[w]hile it may
be that the district court should have sent Houck's § 362 claim
to the bankruptcy court in accordance with its standing order,"
the District Court's failure to do so did not cause a

jurisdictional defect, and the parties' failure to raise the issue in the District Court resulted in a waiver or forfeiture, id. at 483. Accordingly, the Fourth Circuit panel concluded that the District Court did have subject matter jurisdiction to enter the October 1 Order and proceeded to review that decision. Id.

On the merits, the Fourth Circuit panel concluded that Judge Cayer used a faulty legal standard in granting STS's motion to dismiss in his October 1 Order and that STS's motion should have been denied under the correct standard. Judge Cayer's standard "incorrectly undertook to determine whether a lawful alternative explanation appeared more likely" when the correct standard would only examine the complaint to determine whether it contained sufficient facts to support a plausible claim without regard to possible alternative explanations. Id. at 484 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Fourth Circuit panel reviewed the Plaintiff's complaint and concluded that, contrary to STS's allegations in its motion to dismiss, the Plaintiff did sufficiently allege that STS had notice of her second bankruptcy case and that the Plaintiff suffered an injury as a result of the alleged stay violation. Id. at 484—85. The panel also rejected STS's alternative argument that there was no automatic stay in the Plaintiff's second case because she was not eligible to be a

debtor in bankruptcy for lack of evidentiary support in the record. Id. at 486—87. Since there was not an adequate basis to dismiss the § 362 claim, and the District Court dismissed the state law claims as a result of the dismissal of the § 362 claim, the Fourth Circuit also vacated the dismissal of those claims (without expressing any opinion on their merit). Id. at 487. The July 1 Opinion ends as follows:

> The judgment of the district court is vacated; the court's October 1, 2013 order dismissing Houck's § 362(k) claim against the Substitute Trustee is reversed; and the case is remanded for further proceedings.
> *VACATED, REVERSED IN PART, AND REMANDED*

Id.

On remand to the District Court, Judge Cayer entered the Referral Order on his own motion and sent the lawsuit to this court. This court conducted a status hearing on October 28, 2015, continued the status hearing to January 29, 2016, and entered the Briefing Order. On December 22, 2015, the Plaintiff filed a Motion to Withdraw Referral in the District Court. At the January 29, 2016 continued status hearing, this court noted the Plaintiff's pending motion in the District Court and stayed the bankruptcy court proceedings. On February 1, 2016, Judge Cayer entered an order denying the Motion to Withdraw Referral. The Plaintiff asked the District Court to certify an interlocutory appeal of the February 1, 2016 order, and, on March 1, 2016, Judge Cayer denied the Plaintiff's motion. The

Plaintiff filed a Notice of Voluntary Disissal [sic] of Only
Steven G. Tate in the District Court on March 13, 2016.   On
March 15, 2016, the Plaintiff filed a petition for a writ of
mandamus in the Fourth Circuit.   The Fourth Circuit entered a
Judgment denying the petition for writ of mandamus on April 5,
2016.[6]

### THE CURRENT STATUS OF THIS ADVERSARY PROCEEDING

Prior to proceeding with this lawsuit, the court must
determine its current status after its long and winding trip
through the federal court system.   The court's main concern is
determining which claims (and against which parties) remain a
part of the adversary proceeding at this point.   As noted in the
Briefing Order and as shown by the parties' briefs, the Fourth
Circuit reviewed more than just the October 1 Order in the July
1 Opinion, and the July 1 Opinion could be read to impact the
current status of this case in various ways.   With two important
and related principles about appeals in mind, however, the court
concludes that the January 15 Order and the February 20 Order
have not been reversed or vacated, and, therefore, STS is the
only remaining defendant in this adversary proceeding pursuant
to the July 1 Opinion.

The two principles that guide this court in reaching its
conclusion about the current status of this adversary proceeding

---

[6] This court was not aware of the resolution of the Plaintiff's post-referral
motions in the District Court and her petition to the Fourth Circuit until it
was notified by an email from the Plaintiff's attorney on July 11, 2016.

are that (1) an appeal of a particular order does not disturb other orders entered in the same lawsuit that have not been appealed and that (2) an appeal can only affect the parties to it.  Federal Rule of Appellate Procedure ("FRAP") 3 provides the procedure for appeals from a district court to a court of appeals that are allowed by law "as of right."[7]  While the Supreme Court requires lower courts to liberally construe an appellant's documents when determining compliance with the provisions of FRAP 3, Smith v. Barry, 502 U.S. 244, 248 (1992) (citing Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988); Forman v. Davis, 371 U.S. 178, 181—82 (1962)), the rule's "dictates are jurisdictional in nature, . . . their satisfaction is a prerequisite to appellate review," and "noncompliance is fatal to an appeal," id. (citing Torres, 487 U.S. at 316—17).  FRAP 3(c)(1)(B) requires a notice of appeal to "designate the judgment, order, or part thereof being appealed." The Plaintiff's October 28, 2013 Notice of Appeal addresses "the Order granting the Motion to Dismiss by Defendant Substitute Trustee Services, Inc. entered in this action on the First day

---

[7] While the Plaintiff's appeal of the October 1 Order was interlocutory, as noted in the Fourth Circuit's August 27, 2014 unpublished opinion, until the Fourth Circuit applied the doctrine of cumulative finality, this court discusses the appeal pursuant to FRAP 3 because the Plaintiff did not seek permission to appeal pursuant to FRAP 5 and instead proceeded as if the appeal was taken as of right.  The court does not believe that the application of cumulative finality in this lawsuit affects the conclusions of prior cases discussing FRAP 3.

of October, 2013."   The Plaintiff did not appeal any other District Court orders or judgments to the Fourth Circuit.[8]

The Fourth Circuit considered a similar situation in a different context in Jackson v. Lightsey, 775 F.3d 170 (4th Cir. 2014).   In Jackson, a pro se prisoner's notice of appeal identified a 2013 order dismissing two doctors but did not mention a 2012 order in the same lawsuit that dismissed the medical staff.   775 F.3d at 174—175.   The Fourth Circuit noted that FRAP 3(c)(1)(B) should be liberally construed and asked whether the appellant had manifested the intent to appeal the 2012 order and whether the affected putative appellees had notice and an opportunity to respond.   Id. at 176 (citing Spence v. Educ. Credit Mgmt. Corp., 541 F.3d 538, 543 (4th Cir. 2008)). The Fourth Circuit also noted that the appellant's lack of counsel favored a liberal construction of his notice.   Id. at 176 n.2.   Despite the relaxed approach to the notice due to the Supreme Court precedents and the appellant's pro se status, the Fourth Circuit found no indication that the appellant intended to appeal the 2012 order and concluded that it lacked jurisdiction to review it.   Id. at 173, 176.

---

[8] In fact, the Plaintiff did not even attempt to appeal any other District Court orders except the February 1, 2016 Order denying the Plaintiff's December 22, 2015 Motion to Withdraw Referral.   The Plaintiff sought the District Court's certification of her interlocutory appeal of that order, and the District Court's March 1, 2016 Order denies the Plaintiff's February 2, 2016 Motion for Certification of Interlocutory Appeal and to Stay Proceedings.

Just as an appellant's notice of appeal must designate what is being appealed in order for a higher court to have jurisdiction, any parties that could be affected by an appeal must be notified and allowed the opportunity to participate. USA Trouser, S.A. de C.V. v. Andrews, 612 F. App'x 158, 162 n.7 (4th Cir. 2015) (unpublished per curiam) ("To the extent that [the appellant] asserts that the district court erred in calculating damages in its default judgment against ILG, we decline to entertain such a claim because ILG is not a party to this appeal."); Sessler v. Allied Towing Corp., 538 F.2d 630, 633 (4th Cir. 1976) ("Glen Falls . . . is not a party to this appeal.  Due process entitles it to be heard on the question of reducing its recovery by the allowance of fees."); Speers Sand & Clay Works v. Am. Trust Co., 37 F.2d 572, 573 (4th Cir. 1930) ("While these holdings have been assigned as error, none of the persons whose rights . . . have been thus adjudicated has been made a party to the proceedings on appeal.  In such case it is clear that we have no power to review the decision of the court below in so far as it adjudicates their rights.").  In Jackson, the medical staff was not notified of the appeal, invited to file a brief, or represented at oral argument, so review of the 2012 order dismissing the staff would have been prejudicial. 775 F.3d at 177.  While the court was willing to excuse

technical defects, especially for a pro se litigant, it could not excuse defects that deprived other parties of notice.  Id.

In this case, the Plaintiff's October 28, 2013 Notice of Appeal only refers to the October 1 Order and cannot be construed to designate an appeal of the January 15 Order or the February 20 Order.[9]  When the Fourth Circuit heard the appeal, the only parties that filed briefs and appeared were STS and the Plaintiff (and an amicus).  Consistent with the precedents discussed above, the Fourth Circuit did not disturb the rulings in the January 15 Order and the February 20 Order in the course of reversing the October 1 Order.  Accordingly, the January 15 Order and the February 20 Order remain valid orders, and all of the claims against Grid and Lifestore have been dismissed.  The Plaintiff's only remaining claims are those that Judge Cayer dismissed in the October 1 Order and the Fourth Circuit reinstated in the July 1 Opinion, and the only remaining defendant is STS.

Cumulative finality and the breadth of the July 1 Opinion do not change the court's conclusion about the current status of the appeal.  While a "practical approach to finality" could, in theory, involve appellate review of more than the particular order on appeal, the Fourth Circuit limits its review to the

---

[9] In addition to the plain language of the Notice of Appeal, the Plaintiff could not have intended to appeal the January 15 Order or the February 20 Order because the District Court had not entered those orders as of October 28, 2013.

particular order even when it hears an appeal pursuant to cumulative finality. In <u>Equipment Finance Group, Inc. v. Traverse Computer Brokers</u>, part of the Fourth Circuit's rationale for employing cumulative finality was that Synchronized Design and Development Company ("Synchronized"), the defendant that was not affected by the order on appeal and that was subsequently dismissed to create the cumulative finality, would not be prejudiced. 973 F.2d at 348 (noting that Synchronized "is not vulnerable to judgment").[10]  Therefore, the application of the doctrine of cumulative finality does not result in review of anything except the particular order on appeal.

Similarly, while the language of the July 1 Opinion does not clearly denote exactly what and who will be affected, some subtle language in the opinion further buttresses this court's conclusion about the limited nature of the Fourth Circuit's review. For example, the decretal portion of the opinion specifically mentions the October 1 Order and concludes by saying the matter is reversed "in part." If the Fourth Circuit intended to restart the litigation with all of the claims and parties, presumably it would have said so and would have reversed more than a part of the District Court's work. Even

---

[10] Another reason that the <u>Equipment Finance</u> panel decided that the application of cumulative finality was appropriate was that there were "no overlapping claims or issues of joint liability." <u>Equip. Fin.</u>, 973 F.2d at 348. The Plaintiff's complaint in this adversary proceeding did seek to establish "overlapping" claims and joint liability.

though the Fourth Circuit (necessarily) reviewed more than the October 1 Order, the July 1 Opinion did not have an impact on anything except the parties and claims affected by that order.

Accordingly, since the July 1 Opinion reinstated the claims against STS and had no effect on the claims against Grid and Lifestore that Judge Cayer dismissed in his separate orders, this adversary proceeding now consists of the Plaintiff's claims against STS only. This court will also accept the Plaintiff's contention that she can no longer pursue her emotional distress claims, see Plaintiff's Memorandum of Law at 23 ("It appears that the only claims that have been dismissed at this point are the emotional distress claims as to all Defendants."). With all of the claims against Grid and Lifestore and the emotional distress claims against STS dismissed, this lawsuit now consists solely of all of the Plaintiff's claims against STS with the exception of the emotional distress claims.

## SUBJECT MATTER JURISDICTION

After determining exactly what is before it, this court must determine whether it has the subject matter jurisdiction to hear the remaining claims in this adversary proceeding. Unfortunately, the court does not have jurisdiction to hear all of the remaining claims. While the court can hear the § 362 stay violation claim, it cannot hear the Plaintiff's remaining state law claims.

Like all federal courts, bankruptcy courts have limited jurisdiction. Celotex Corp. v. Edwards, 514 U.S. 305, 307 (1995); Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir. 1992). Generally and unsurprisingly, Congress has limited the jurisdiction of bankruptcy courts to bankruptcy matters. More specifically, Congress provided a statutory scheme to define the jurisdiction of bankruptcy courts.

Section 1334 of title 28 gives district courts jurisdiction to hear bankruptcy matters. The district courts have "original and exclusive jurisdiction of all cases under title 11," § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," § 1334(b). Section 1334(a) ("cases") primarily applies to the administration of the bankruptcy estate, while "virtually every act a bankruptcy judge is called upon to perform in a judicial capacity is a 'civil proceeding' within § 1334(b)." Menk v. Lapaglia (In re Menk), 241 B.R. 896, 908—09 (B.A.P. 9th Cir. 1999); see also Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661—62 (1st Cir. 2017) (" '[C]ases under title 11' refers only to the bankruptcy petition itself, and it is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place." (citing New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292

20

F.3d 61, 66 (1st Cir. 2002))); H.R. REP. No. 95-595, at 445
(1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6401 ("[A]nything
that occurs within a case is a proceeding.  Thus, proceeding
here is used in its broadest sense, and would encompass what are
now called contested matters, adversary proceedings, and plenary
actions under the current bankruptcy law.").  Section 157 of
title 28 allows district courts to refer bankruptcy cases and
proceedings to bankruptcy courts,[11] and the District Court's
April 14, 2014 Amended Standing Order of Reference refers all
cases and proceedings under title 11 to this court.

Section 1334(b) divides jurisdiction for bankruptcy
proceedings into three categories: "arising under," "arising
in," and "related to."  Gaitor v. U.S. Bank, Nat'l Ass'n (In re
Gaitor), Nos. 14-9059, 13-80530, 2015 WL 4611183, at *5 (Bankr.
M.D.N.C. July 31, 2015) (citing Bauer v. JP Morgan Chase Bank
(In re Bauer), Nos. 12-37, 11-41910, 2012 WL 4442241, at *2

---

[11] Section 157 also provides a distinction between "core" and "non-core"
bankruptcy proceedings and establishes procedures for each.  While the
core/non-core distinction is frequently at issue in litigation over the
judicial authority of bankruptcy courts, see, e.g., Stern v. Marshall, 564
U.S. 462, 131 S. Ct. 2594 (2011), it is not at issue in this adversary
proceeding.    Section 1334 establishes bankruptcy jurisdiction, Valley
Historic Ltd. v. Bank of N.Y., 486 F.3d 831, 839 n.3 (4th Cir. 2007) ("Only
after jurisdiction is established pursuant to § 1334 is resort made to 28
U.S.C. § 157 to determine whether the proceeding is 'core' or 'non-core.' "),
and section 157 "relates to the power of the bankruptcy court to resolve the
issues brought before it after jurisdiction is established," Abner v. Mate
Creek Loading, Inc., 283 B.R. 176, 186 (S.D. W. Va. 2002); see also Stern,
131 S. Ct. at 2607 ("Section 157 allocates the authority to enter final
judgment between the bankruptcy court and the district court.    That
allocation does not implicate questions of subject matter jurisdiction.")
(citations omitted); Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 569
(5th Cir. 1995) ("Section 157 does not give bankruptcy courts power beyond
that granted in 28 U.S.C. § 1334; rather, § 157 allows district courts to
assign cases to the bankruptcy courts." (citing 3 DAVID G. EPSTEIN ET AL.,
BANKRUPTCY § 12-1 (1992))).

(Bankr. N.D. Ala. Sept. 24, 2012)). "Arising under" proceedings involve causes of action created by the Bankruptcy Code. <u>Gupta</u>, 858 F.3d at 662 (citing <u>Stoe v. Flaherty</u>, 436 F.3d 209, 217 (3d Cir. 2006); <u>Wood v. Wood (In re Wood)</u>, 825 F.2d 90, 96 (5th Cir. 1987)). "Arising in" proceedings " 'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.' " <u>Bergstrom v. Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)</u>, 86 F.3d 364, 372 (4th Cir. 1996) (quoting <u>Wood</u>, 825 F.2d at 97). "Arising under" and "arising in" proceedings are similar in that neither would exist without a bankruptcy case. The distinction between the two is that there is an explicit statutory basis for "arising under" proceedings in the text of the Bankruptcy Code.

The third category of jurisdiction for bankruptcy proceedings, "related to," covers a broader range of proceedings. <u>Celotex Corp.</u>, 514 U.S. at 307—08; <u>Canal Corp.</u>, 960 F.2d at 403 (citing COLLIER ON BANKRUPTCY ¶ 3.01 at 3–28 (15th ed. 1989)); <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."). The universe of "related to" proceedings, however, is not unlimited, <u>Celotex Corp.</u>, 514 U.S. at 309; <u>Pacor</u>, 743 F.2d at 994 ("The jurisdiction of the bankruptcy courts to hear

cases related to bankruptcy is not without limit, however, and there is a statutory, and eventually constitutional, limitation to the power of a bankruptcy court."), and the Fourth Circuit has adopted the Pacor test for determining whether a proceeding is sufficiently "related to" a bankruptcy case, Valley Historic, 486 F.3d at 836; see also Celotex Corp., 514 U.S. at 309 (agreeing with the Pacor test). The Pacor test examines "whether the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, 743 F.2d at 994. A "proceeding need not necessarily be against the debtor or against the debtor's property" because "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. Nevertheless, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." Celotex Corp., 514 U.S. at 309 n. 6.

The Plaintiff's claims in this adversary proceeding can be divided into two categories, the stay violation claim pursuant to 11 U.S.C. § 362 and the state law claims, and the court will examine its jurisdiction to hear each category of claims separately. This court has "arising under" jurisdiction to hear the stay violation claim because it is based on a right of

action created by the Bankruptcy Code, see Houck v. Substitute Tr. Servs., 791 F.3d 473, 481 (4th Cir. 2015); Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1083 (10th Cir. 2009) ("Categorizing a § 362(k)(1) proceeding is not difficult."); Davis v. Courington (In re Davis), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995), and only exists as a result of Houck's second bankruptcy case.[12]   In addition, the Fourth Circuit noted in the July 1 Opinion that the Plaintiff's stay violation claim could be and perhaps should have been referred to this court.   Houck, 791 F.3d at 483 ("While it may be that the district court should have sent Houck's § 362(k) claim to the bankruptcy court in accordance with its standing order, . . . .").

One of the many quirks of this lawsuit, namely the fact that the Plaintiff's second bankruptcy case has been dismissed and closed, does not affect the court's conclusion that it has "arising under" jurisdiction to hear the stay violation claim. The statute that provides jurisdiction for bankruptcy proceedings does not contain an explicit direction that a § 1334(a) "case" must be open for a bankruptcy court to have jurisdiction over a § 1334(b) "proceeding." Menk, 241 B.R. at 904. The statute even implies that an active and open base case is not a prerequisite to "arising under" jurisdiction by

---

[12] While, as previously mentioned, the core/non-core distinction is not directly relevant to jurisdiction, the court notes that a stay violation claim is a core matter for which this court can enter a final judgment. § 157(b); Johnson, 575 F.3d at 1082—83.

referring to "cases" when discussing jurisdiction for "arising in" and "related to" matters but not in relation to "arising under" proceedings.   § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11."); <u>Menk</u>, 241 B.R. at 905.   The legislative history of the Bankruptcy Reform Act of 1978 explicitly states that courts can hear "arising under" proceedings after a case is closed.   H.R. REP. NO. 95-595, at 445, *reprinted in* 1978 U.S.C.C.A.N. at 6401 ("Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization plan, and so on.   The bankruptcy courts will be able to hear these proceedings because they arise under title 11.").

While dismissal may have "different and more significant consequences than closing a case," "a certain amount of residual jurisdiction . . . survives even dismissal," <u>Menk</u>, 241 B.R. at 912, and "a cause of action that survives dismissal inherently survives closing," <u>id.</u> at 906.   Other courts have held that stay violation claims survive the dismissal of a base bankruptcy case.   <u>Johnson</u>, 575 F.3d at 1084 (noting that "[t]he great

weight of case authority supports our conclusion that a
§ 362(k)(1) proceeding remains viable after termination of the
underlying bankruptcy case" and collecting cases).  In Price v.
Rochford, the Court of Appeals for the Seventh Circuit reviewed
a situation where a debtor filed three bankruptcies over the
course of a year that were dismissed "[w]ith increasing
alacrity."  947 F.2d 829, 830 (7th Cir. 1991).  The debtor
brought suit against various creditors five months after the
dismissal of his third case for stay violation claims during the
cases.  Id.  While the district court below believed that the
remedy for a stay violation was "a special statutory power of
contempt to be exercised by bankruptcy judges while the
bankruptcy is pending," the Seventh Circuit decided that "the
language of the statute does not support the limitation" and
noted a prior case, Martin-Trigona v. Champion Fed. Sav. & Loan
Ass'n, 892 F.2d 575 (7th Cir. 1989), where a debtor was allowed
to pursue stay violation claims six or seven years after a
bankruptcy case ended.  Price, 947 F.2d at 831.

In Johnson v. Smith (In re Johnson), the Court of Appeals
for the Tenth Circuit rejected a creditor's argument that the
dismissal of a Chapter 13 case while an adversary proceeding was
on appeal divested the bankruptcy court of jurisdiction to hear
a stay violation claim post-remand.  Johnson, 575 F.3d at 1081.
The Tenth Circuit could not find any statutory provision in the

Bankruptcy Code that required a stay violation claim to be dismissed along with the base case and noted that "[n]o part of § 362(k)(1) suggests that a claim exists only while the bankruptcy case remains pending." Id. at 1084.   The Johnson court also noted that the Bankruptcy Code provision dealing with the effects of dismissal, 11 U.S.C. § 349, did not provide for termination of stay violation proceedings. Id.; see also Davis, 177 B.R. at 911 ("Section 349(b) does not . . . vitiate any cause of action based upon violation of the stay."); Burgner v. Ga. Fed. Credit Union (In re Burgner), 218 B.R. 413, 413—414 (Bankr. E.D. Tenn. 1998) (holding that § 349 did not require dismissal of a stay violation claim).   The Tenth Circuit did not think there was any reason to require a bankruptcy court to announce that it was retaining jurisdiction over the stay violation claim when the base case was dismissed or for requiring the debtors to seek to reopen the base case. Johnson, 575 F.3d at 1084.

In addition to the statutory support, there is a practical basis to conclude that stay violation claims remain viable after the conclusion of a base case.   The automatic stay is one of the most important tools provided by Congress, and the entire bankruptcy scheme would not work without it. Crespo Torres v. Santander Fin. Servs., Inc. (In re Crespo Torres), 532 B.R. 195, 201 (Bankr. D.P.R. 2015) ("Given its utmost importance in the

bankruptcy system, courts 'must display a certain rigor in reacting to violations of the automatic stay.' " (quoting Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975—76 (1st Cir. 1997))). Section 362(k) allows debtors to recover their actual damages and, if appropriate, punitive damages when creditors willfully violate the stay and thus "provides compensation for and punishment of intentionally wrongful conduct." Davis, 177 B.R. at 911. There is no good reason to excuse intentionally wrongful conduct just because a base bankruptcy case is no longer active. Id. at 912; see Johnson, 575 F.3d at 1083 ("It is particularly appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) proceedings because their purpose is not negated by dismissal of the underlying bankruptcy case."). In fact, it is not too difficult, especially in reorganizations under Chapters 11 and 13, to come up with a scenario where a stay violation could directly lead to the dismissal of a bankruptcy case. For example, if a creditor repossesses a Chapter 13 debtor's car in violation of the stay, the debtor might not be able to travel to work, and her case could be dismissed due to a plan payment default. If the dismissal of a base case removes the bankruptcy court's jurisdiction to hear stay violation claims and a stay violation led to the dismissal of a base case, a creditor could simultaneously violate the stay and immunize itself from

sanctions for the violation, which would be absurd even if it was the result called for by the Bankruptcy Code (which it is not).

While the status of the Plaintiff's second bankruptcy case as dismissed and closed does not affect this court's ability to hear her stay violation claim, it does remove the court's subject matter jurisdiction to hear her state law claims. The court does not have (and could never have had) "arising under" or "arising in" jurisdiction to hear the state law claims because those claims exist independently of the Plaintiff's bankruptcy cases and do not depend on bankruptcy, either explicitly or implicitly, for their existence. The state law causes of action are not explicitly created by the Bankruptcy Code, so they are not "arising under" claims. Similarly, the existence of the state law claims is not dependent on the Plaintiff's bankruptcy case(s), so they are not "arising in" claims. See Gupta, 858 F.3d at 664 (noting that the issue for "arising in" jurisdiction is not whether a particular claim arose during a bankruptcy case but whether the claim could only exist in a bankruptcy case); Valley Historic, 486 F.3d at 836 ("Here, the Debtor's claims bear only a coincidental relationship to the Debtor's bankruptcy case. They would have existed whether or not the Debtor filed bankruptcy. It follows that because the Debtor's [claims] would have existence outside

of the bankruptcy, they were not within the bankruptcy court's 'arising in' jurisdiction.").

Accordingly, "related to" is the only possible type of bankruptcy jurisdiction that would allow this court to hear the Plaintiff's state law claims.  If the Plaintiff's second bankruptcy case was still active, the court would have "related to" jurisdiction to hear the state law claims.  The Plaintiff's state law claims deal almost entirely with events that occurred prior to the filing of her second bankruptcy case, and the claims would have been property of her bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).  See Vogel v. Palmer (In re Palmer), 57 B.R. 332, 333 (Bankr. W.D. Va. 1986) ("[Property of the estate] includes all kinds of property, wherever located, tangible or intangible, *causes of action*, and all other forms of property . . . ." (emphasis added) (citing H.R. REP. No. 95-595, at 367—68, *as reprinted in* 1978 U.S.C.C.A.N. 5787, 6323—24)). "Related to" jurisdiction includes "causes of actions owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541." Celotex Corp., 514 U.S. at 307, n.5.  Bankruptcy courts have subject matter jurisdiction over pre-petition causes of action during a bankruptcy case, even if the causes of action do not "arise under" or "arise in" bankruptcy, because a debtor's bankruptcy estate could be augmented by the successful prosecution of his claims.  Davis, 177 B.R. at 912 ("During the

pendency of the bankruptcy case, the court had subject-matter jurisdiction over the state law claims because the Appellant was a chapter 13 debtor and the action would have an effect on her bankruptcy estate.").

After a bankruptcy case is over, however, the basis for "related to" jurisdiction becomes more attenuated at best. While the language of the Pacor test is broad and vague, Pacor, 743 F.2d at 994 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*."), it does require some effect on a debtor's bankruptcy estate, and "the more one must stretch to find an 'effect' on the estate, the greater the chance that a trial or appellate court will find subject-matter jurisdiction wanting," Hawkins v. Eads (In re Eads), 135 B.R. 387, 393 (Bankr. E.D. Cal. 1991). In a situation like the Plaintiff's, where her second bankruptcy case lasted for less than a week prior to dismissal and there was no administration of her bankruptcy estate, there is no basis for bankruptcy court jurisdiction over her state law claims. Celotex Corp., 514 U.S. at 308 n.6 ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.").

The Fourth Circuit has concluded that bankruptcy jurisdiction was absent in far closer situations than that of the Plaintiff's state law claims. For example, the Fourth Circuit considered the limits of "related to" jurisdiction after the confirmation of a debtor's Chapter 11 plan in Valley Historic. 486 F.3d at 836–38. The debtor's plan provided for the bankruptcy court to retain jurisdiction[13] over a post-confirmation adversary proceeding but did not call for the use of any recovery from the adversary proceeding. Id. at 834. The Fourth Circuit noted that Pacor involved a pre-confirmation analysis and that the United States Court of Appeals for the Third Circuit had subsequently adopted a "clear nexus" test for post-confirmation jurisdiction. Id. at 836 (citing Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 166 (3d Cir. 2004)). The Fourth Circuit approved of the "clear nexus" test, which requires a claim to " 'affect an integral aspect of the bankruptcy process' " in order for a bankruptcy court to have jurisdiction post-confirmation. Id. (quoting Binder, 372 F.3d at 167). " 'Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus,' " id. at 836–37 (quoting Binder, 372

---

[13] A bankruptcy court cannot create jurisdiction by "retaining" it. Gupta, 858 F.3d at 663; Valley Historic, 486 F.3d at 837 ("[N]either the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction is otherwise lacking.").

F.3d at 167), and the "close nexus" test "insures that the
proceeding serves a bankruptcy administration purpose on the
date the bankruptcy court exercises that jurisdiction," id. at
837. The Fourth Circuit could not find any "conceivable
bankruptcy administration purpose to be served by the Debtor's
adversary proceeding" and concluded that the bankruptcy court
did not have subject matter jurisdiction over the post-
confirmation adversary proceeding pursuant to § 1334(b). Id. at
837, 838. The court also rejected the debtor's argument that
the grant of exclusive jurisdiction over a debtor's property in
28 U.S.C. § 1334(e) provided a basis for subject matter
jurisdiction over the adversary proceeding because the debtor
"would still have had to establish jurisdiction under § 1334(b),
since § 1334(e) does not by itself create jurisdiction to
conduct civil proceedings." Id. at 837—38.

There is a much stronger basis for bankruptcy jurisdiction
in Valley Historic than there is for the Plaintiff's state law
claims. There, the debtor confirmed a Chapter 11 plan that
called for the bankruptcy court to retain jurisdiction over a
post-confirmation adversary proceeding, and the Fourth Circuit
decided that jurisdiction was lacking. Here, the Plaintiff's
second bankruptcy case only lasted five days, there was no
administration of her estate, and she did not even propose a
plan of reorganization. This court does not have jurisdiction

to hear state law claims that are this remote from the Plaintiff's bankruptcy case(s).

Some courts, including some whose opinions are cited in this order, have concluded that, like district courts, bankruptcy courts can exercise supplemental jurisdiction, or something akin to supplemental jurisdiction, and hear state law claims that are factually related to a federal claim. See, e.g., Davis, 177 B.R. at 912. While the Supreme Court and the Fourth Circuit have not directly weighed in on the issue, Gaitor, 2015 WL 4611183, at *7, the available authority supports the conclusion that bankruptcy courts cannot exercise supplemental jurisdiction. There is no express statutory basis for supplemental jurisdiction in bankruptcy courts, as district courts derive the authority from 28 U.S.C. § 1367, § 1367 does not give the same authority to bankruptcy courts, there is no statute that gives bankruptcy courts the authority to exercise supplemental jurisdiction, Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 572 (5th Cir. 1995), and 11 U.S.C. § 157 only authorizes district courts to share their bankruptcy jurisdiction with bankruptcy courts.

Similarly, while the issue is not explicitly addressed, it is very difficult to find support for a bankruptcy court's exercise of supplemental jurisdiction in cases examining bankruptcy jurisdiction. In Celotex Corp., the Supreme Court

limited bankruptcy court jurisdiction to proceedings that have some effect on a debtor, 514 U.S. at 308 n.6, and supplemental jurisdiction can be far broader, Walker, 51 F.3d at 573. In fact, Pacor explicitly rejects the primary rationale for supplemental jurisdiction, common issues of fact and judicial economy, as a basis for bankruptcy jurisdiction. See 743 F.2d at 994; see also Gaitor, 2015 WL 4611183, at *7 (noting that the Pacor and § 1367 standards are not equivalent). Convenience is also not a valid basis for supplemental jurisdiction. Finley v. United States, 490 U.S. 545, 555 (1989). Finally, when considering more expansive ideas about the jurisdiction of bankruptcy courts, "caution is particularly appropriate . . . at a time in which the Article I judicial power itself is under scrutiny" in cases like Stern and its progeny. In re Marko, No. 11-31287, 2014 WL 948492, at *5 (Bankr. W.D.N.C. Mar. 11, 2014) (citation omitted).

Accordingly, this court has "arising under" subject matter jurisdiction to hear the Plaintiff's stay violation claim pursuant to 11 U.S.C. § 362, but the court does not have subject matter jurisdiction to hear the Plaintiff's state law claims.

## CONCLUSION

Prior to arriving in this court, the Plaintiff filed this lawsuit in the District Court, and the lawsuit took several trips to the Fourth Circuit. When the lawsuit arrived in this

court, several claims and two defendants had already been
dismissed, and the lawsuit now consists of the Plaintiff's stay
violation claim pursuant to 11 U.S.C. § 362 and her state law
claims other than her emotional distress claims against
Substitute Trustee Services, Inc., the only remaining defendant.
This court has subject matter jurisdiction to hear the federal
stay violation claim pursuant to its "arising under" bankruptcy
jurisdiction, but it cannot hear the state law claims because
they do not "arise under" or "arise in" bankruptcy and they are
not "related to" a bankruptcy case because there is no
bankruptcy estate that might be augmented.

Since this court can only hear part of the lawsuit, the
court believes that the claims should be heard in a court that
can hear all of the claims simultaneously. See Price, 947 F.2d
at 832 n.1 ("[A]fter a bankruptcy is over, it may well be more
appropriate to bring suit in district court, especially when
other claims are attached."). Accordingly, the court hereby
respectfully **RECOMMENDS THAT THE DISTRICT COURT WITHDRAW THE
REFERENCE OF THIS ADVERSARY PROCEEDING.** In addition, the court
hereby **SETS A STATUS HEARING** for 9:30 a.m. on March 9, 2018 at
the United States Courthouse, 200 West Broad Street,
Statesville, North Carolina 28677 to determine how this
adversary proceeding will proceed. The Clerk of this court is
hereby **DIRECTED** to serve a copy of this order on the parties and

the District Court for its consideration of this court's recommendation that it withdraw the reference of this adversary proceeding.

**SO ORDERED.**

This Order has been signed                     United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.