FILED & JUDGMENT ENTERED
Steven T. Salata

February 15 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **DIANA HOUCK,** | ) | Chapter 13 |
| | ) | Case No. 11-51513 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **DIANA HOUCK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 15-5028 |
| | ) | |
| **SUBSTITUTE TRUSTEE SERVICES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**
**AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS**

This order comes at a pivotal crossroad in a lengthy and complex lawsuit involving Diana Houck (the "Plaintiff") and a party involved in the foreclosure sale of her home on December 20, 2011, Substitute Trustee Services, Inc. ("STS" or the "Defendant"). Indeed, after over five years of litigation, one question remains

for this court to decide: whether the actions and inactions of STS on the afternoon of December 20, 2011 violated the automatic stay as codified in 11 U.S.C. § 362 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"). As more extensively outlined in this court's February 5, 2018 Order Determining the Status of This Adversary Proceeding, Examining This Court's Subject Matter Jurisdiction, Recommending Withdrawal of the Reference, and Setting Status Hearing" (the "Recommendation Order"), this adversary proceeding resulted in a number of extremely complicated procedural and jurisdictional questions. Only the facts and procedural history relevant to this particular order are repeated below.

For all of the reasons stated below, this court hereby grants summary judgment in favor of the Plaintiff and finds that STS willfully violated the automatic stay as outlined in § 362. Further, the court denies the Plaintiff's motion for sanctions because STS's actions during the deposition at issue were not worthy of sanctions.

## FACTS

Prior to this lawsuit, the Plaintiff filed two pro se Chapter 13 bankruptcy cases in this court. She filed her first case, case no. 11-51141 (the "First Bankruptcy Case"), on September 12, 2011 by filing a "bare-bones" petition. The Plaintiff's petition was missing many of the schedules and statements required of all

Chapter 13 debtors. This court dismissed the First Bankruptcy Case on September 30, 2011 because the Plaintiff failed to timely file the missing documents.

The Plaintiff commenced her second Chapter 13 case, case no. 11-51513 (the "Second Bankruptcy Case"), on December 16, 2011. Again, the Plaintiff filed a "bare-bones" petition; her submission was missing many of the same schedules and statements that were missing in the First Bankruptcy Case. In conjunction with her petition, the Plaintiff requested additional time to file a certificate of credit counseling with the court.

Unfortunately, the Debtor's filing did not have its desired effect because on December 20, 2011 at 12:57 P.M. a report of sale was filed in the Ashe County Clerk of Superior Court's office indicating that the Debtor's residence had been sold (the "Foreclosure Sale") to Lifestore Bank ("Lifestore").

There are conflicting arguments about when STS received notice of the Second Bankruptcy Case. On the one hand, STS argues that it did not receive notice of the Second Bankruptcy Case until April 2, 2012, well after the Foreclosure Sale, when it got a call from the Plaintiff's husband, Richard Penley ("Penley"), regarding his pending bankruptcy case. Memorandum in Support of Substitute Trustee Services, Inc.'s Motion for Summary Judgment, Houck v. Substitute Trustee Servs., Inc., No. 15-5028 (Bankr. W.D.N.C. Oct. 31, 2018), ECF No. 59, at 7 (hereinafter, "STS's Brief"). However,

STS then includes a footnote on the same page of its brief that reads:

> It appears that [the Plaintiff's husband's] lender, Nationstar Mortgage, LLC, alerted Hutchens to the filing of the [Second Bankruptcy Case] in connection with [Penley's foreclosure file] on December 20, 2011 at approximately 3:52 P.M — three (3) hours after the foreclosure sale had been held in connection with the Houck Foreclosure Proceeding.

STS's Brief at 7 n.1. To reconcile these inconsistent statements, STS argued at the hearing that the "notice" it got from Nationstar Mortgage, LLC ("Nationstar") on December 20, 2011 was given to the Hutchens Law Firm ("Hutchens"), not STS, and was received only with respect to Penley's case, not the Plaintiff's Second Bankruptcy Case specifically.  STS was represented by the Hutchens Law Firm.

In response, the Plaintiff asserts in its Complaint that Hutchens, and necessarily STS, actually received a call from Penley on December 16, 2011 advising the Hutchens Law Firm of the Second Bankruptcy Case.[1] Second, the Plaintiff notes that Lifestore was listed on the Plaintiff's creditor matrix that she included with the Second Bankruptcy Case filing; Plaintiff maintains that this undercuts STS's theory that it didn't get notice until April 2012. Finally, and most importantly, the Plaintiff argues that even if the court is not convinced that Penley called STS on December 16,

---

[1] Hutchens says that its thorough business records do not reflect a phone call from the Plaintiff or Penley between December 16, 2011 and December 20, 2011. STS's Brief at 6.

2011, STS still had notice as of December 20, 2011 at 3:52 P.M.
The Plaintiff points to STS's own admissions found in the
aforementioned footnote and subsequent deposition excerpts. See
Memorandum in Support of Defendant Substitute Trustee Services,
Inc.'s Response in Opposition to Plaintiff's Motion to Amend and
Compel, at Ex. B., Houck v. Substitute Tr. Servs., Inc., No. 15-
05028, ECF No.49.

Following Nationstar's call, STS took no action with respect
to the Foreclosure Sale during the Second Bankruptcy Case. On
December 21, 2011, this court dismissed the Second Bankruptcy Case
due to the Plaintiff's failure to satisfy the credit counseling
requirement. It is these events—events during the five-day
lifespan of the Second Bankruptcy Case—that gave rise to the last
several years of litigation.

## PROCEDURAL HISTORY

A year and a half after this court dismissed the Second
Bankruptcy Case, this adversarial proceeding began its less than
traditional journey through the court system. The Plaintiff filed
a complaint in the United States District Court for the Western
District of North Carolina ("District Court") on April 26, 2013.
The complaint, as subsequently amended, alleges that the original
defendants, Lifestore, STS, and Grid Financial Services, Inc.
("Grid"), fraudulently engaged in a conspiracy to cause the
Plaintiff to default on her mortgage payments in violation of

several state laws and then foreclosed on her property in violation

of the Bankruptcy Code's automatic stay. In July of 2013, the

parties filed a Joint Stipulation of Consent to Exercise

Jurisdiction by a United States Magistrate Judge, and the District

Court assigned the lawsuit to the Honorable David S. Cayer. On

October 1, 2013, Judge Cayer entered a Memorandum and Order

("October 1 Order") granting STS's motion to dismiss and dismissing

all of the claims against STS. The Plaintiff filed a Notice of

Appeal of the October 1 Order on October 28, 2013.[2] Several months

later, on August 27, 2014, the Fourth Circuit entered an

unpublished opinion dismissing the Plaintiff's appeal of the

October 1 Order for lack of jurisdiction.

Eventually, the Plaintiff returned to the Fourth Circuit and

filed a motion for clarification of its August 27, 2014 opinion.

On December 17, 2014, the Fourth Circuit recalled its mandate and

granted panel rehearing of the Plaintiff's appeal of the October

1 Order. After rehearing this matter, the Fourth Circuit entered

an opinion on July 1, 2015 that, among other things, reversed the

---

[2] During the pendency of the Plaintiff's appeal of the October 1 Order to the
United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit"),
Judge Cayer entered two more dismissal orders. On January 15, 2014, Judge Cayer
entered a Memorandum and Order ("January 15 Order") that dismissed some of the
state law claims against Lifestore and Grid. On February 20, 2014, Judge Cayer
entered another Memorandum and Order ("February 20 Order") after Grid filed a
motion to dismiss for lack of subject matter jurisdiction. The February 20 Order
mentions Grid's argument that § 362 does not create a private cause of action
outside of the bankruptcy court for stay violations, notes that this court
previously dismissed the Second Bankruptcy Case, and decides that dismissal of
her § 362 claim is "the appropriate remedy."

October 1 Order, and remanded the case for further proceedings.
Houck v. Substitute Tr. Servs., Inc. (In re Houck), 791 F.3d 473,
487 (4th Cir. 2015) ("July 1 Opinion").

In its opinion, the Fourth Circuit panel concluded that the
District Court undertook the wrong legal analysis in granting STS's
motion to dismiss in the October 1 Order and found that STS's
motion should have been denied under the correct standard. Id. at
484-85. Moreover, the Fourth Circuit panel reviewed the
Plaintiff's complaint and concluded that, contrary to STS's
allegations in its motion to dismiss, the Plaintiff did
sufficiently allege that STS had notice of the Second Bankruptcy
Case and that the Plaintiff suffered an injury as a result of the
alleged stay violation. Id. at 486. The panel also rejected STS's
alternative argument that there was no automatic stay in the Second
Bankruptcy Case because the Plaintiff was not eligible to be a
debtor. Id. at 487. Specifically, the Fourth Circuit determined:

> While Houck's second bankruptcy petition was filed
> within 180 days after the dismissal of her first
> petition, the Substitute Trustee has not shown that the
> first petition was dismissed because Houck *willfully*
> failed to abide by the bankruptcy court's orders or to
> appear in proper prosecution of her case. Indeed, the
> record shows to the contrary. The bankruptcy court
> dismissed Houck's first petition, which she filed pro
> se, because she "failed to file certain schedules,
> statements, or other documents." It made no mention of
> Houck's failure being *willful* . . .[.]
>
> Moreover, when Houck filed her second petition . . . no
> party to the second petition questioned whether Houck
> was an eligible debtor . . .[.]

Whether Houck was an eligible debtor when she filed her second petition is a fact-bound question that requires evidentiary support. Finding no such evidence in the record, we reject the Substitute Trustee's alternative ground for dismissal.

Id. (citation omitted)

On remand to the District Court, Judge Cayer entered his September 22, 2015 Order of Referral to the Bankruptcy Court ("Referral Order") on his own motion and sent the lawsuit to this court. This court then entered an Order Requiring Briefing on Questions of Status, Jurisdiction, and Preemption on November 3, 2015 (the "Briefing Order"). On December 22, 2015, the Plaintiff filed a Motion to Withdraw Referral that was denied by Judge Cayer

This court entered the Recommendation Order on February 5, 2018. As its name suggests, the order outlines the status of the lawsuit and this court's view on its subject matter jurisdiction over the Plaintiff's § 362 and state law claims. Recommendation Order, case no. 15-05028, ECF no. 27. This court concluded that the Plaintiff's appeal to the Fourth Circuit did not affect the District Court's orders dismissing the claims against Grid and Lifestore, see supra n.1, and that STS is the only remaining defendant. Id. at 3. Similarly, this court found that the only remaining claims in this case were the § 362(k) claim against STS and some of Plaintiff's state law claims against STS. Id. This court recommended that the District Court withdraw the reference as to the entire adversary proceeding, § 362 claim and state law

claims alike, so all of the claims might be heard together. <u>Id.</u> at 3-4.

The District Court assigned review of the Recommendation Order to the Honorable Max O. Cogburn, Jr. and, on February 7, 2018, Judge Cogburn entered an order that found that this court is "uniquely qualified to determine whether a willful violation of the automatic stay in bankruptcy occurred." <u>Houck v. Lifestore Bank</u>, Case No. 18-00022, at 1 (W.D.N.C. Feb. 7, 2015). Judge Cogburn declined to withdraw the reference of the § 362 claim and remanded that claim to this court for prompt resolution. <u>Id.</u> at 4. Judge Cogburn dismissed the remaining state law claims without prejudice. <u>Id.</u> at 4.

Accordingly, this court set out to decide the § 362 claim. The court heard cross-motions for summary judgment and the Plaintiff's motion for sanctions[3] on November 7, 2018. Before the court is whether, as a matter of law, STS willfully violated the

---

[3] The court notes that the Plaintiff's "Cross-Motion for Summary Judgment and Motion for Sanctions" were not timely filed. STS raised no objection to the court hearing these untimely motions. Nonetheless, even if STS had objected to the court ruling on the Plaintiff's motions, this court has the power to grant summary judgment in favor of a non-moving party *sua sponte*. A court "may enter summary judgment *sua sponte* 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.' " <u>Penley v. McDowell Cty. Bd. of Educ.</u>, 876 F.3d 646, 661 (4th Cir. 2017) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986)). "The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact . . . . [a]nd it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." <u>U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n</u>, 873 F.2d 731, 735 (4th Cir. 1989); F.R.B.P. 56(f)(1). Here, STS, in arguing its own motion for summary judgment, had sufficient notice that it must come forward with all of its evidence. Moreover, STS was given ample opportunity to present all evidence in its favor at the hearing and, more broadly, over the course of the past five years of litigation.

11 U.S.C. § 362 automatic stay. This court must also decide whether STS's actions and inactions with respect to the Rule 30(b)(6) deposition of Lawrence C. Miller, vice-president of STS, warrant sanctions.

## JURISDICTION

This court has jurisdiction over the issues presented pursuant to 28 U.S.C. § 1334. Moreover, these matters concern core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G).

## STANDARD OF REVIEW

When considering a motion for summary judgment, the court views the pleadings and materials presented in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citation

omitted); see FED. R. BANKR. P. 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings.").

**ANALYSIS**

Based on the record before the court and the arguments presented at the November 7, 2018 hearing, the court finds that: (I) The Plaintiff was eligible to be a debtor when she filed the Second Bankruptcy Case. Therefore, the automatic stay went into effect with respect to the Plaintiff on December 16, 2011 and remained in effect until December 21, 2011 when the court dismissed the Second Bankruptcy Case. (II) STS willfully violated the automatic stay when it received notice of the Second Bankruptcy Case and took no steps to undo the effects of the Foreclosure Sale. Finally, (III) the court concludes that STS's behavior in relation to Lawrence Miller's deposition did not rise to the level of sanctionable conduct.

## I. Eligibility under 11 U.S.C. § 109(g)

Typically, an individual who files bankruptcy is considered a debtor from the time of the filing of their bankruptcy petition, and the automatic stay instantaneously goes into effect upon filing. See In re Highsmith, 542 B.R. 738, 746 ((Bankr. M.D.N.C. 2015) (quoting 11 U.S.C. § 362(a)(6)) ("The filing of a petition under 11 U.S.C. § 301 'operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case

. . . .'")); see <u>Grundy Nat. Bank. v. Looney (In re Looney)</u>, 823
F.2d 788, 790 (4th Cir. 1987). However, in a narrow set of
circumstances, "certain filings do not trigger the stay." <u>Houck</u>,
791 F.3d at 486–87. One such situation is where an individual is
deemed ineligible to be a "debtor" as this term is defined under
the Bankruptcy Code. <u>Houck</u>, 791 F.3d at 487. "For example, a filing
under 11 U.S.C. § 301, like [the filing of a Chapter 13 petition],
does not operate as a stay 'of any act to enforce any lien against
or security interest in real property'" if the individual is
ineligible to be a debtor under 11 U.S.C. § 109(g). <u>Id.</u>; <u>see also</u>
<u>In re Prud'Homme</u>, 161 B.R. 747, 751 (Bankr. E.D.N.Y. 1993) ("Where
a debtor's lack of entitlement under § 109(g) is clear and
unquestioned, the filing is void *ab initio* and there exists no
automatic stay for" a court to enforce.)

In turn, the question is whether an individual is eligible to
be a debtor under § 109(g). Instructively, § 109(g)(1) of the
Bankruptcy Code reads in pertinent part:

> no individual . . . may be a debtor under this title who
> has been a debtor in a case pending under this title at
> any time in the preceding 180 days if the case was
> dismissed by the court for willful failure of the debtor
> to abide by orders of the court, or to appear before the
> court in proper prosecution of the case.

11 U.S.C. § 109(g)(1). The § 109(g)(1) bar outlined above is "'an
*extraordinary* statutory remedy for *perceived abuses* of the
[Bankruptcy] Code.'" <u>Houck</u>, 791 F.3d at 487 (quoting <u>Frieouf v.</u>
<u>United States (In re Frieouf)</u>, 938 F.2d 1099, 1104 (10th Cir.

12

1991). Thus, when an individual files a bankruptcy case but is ineligible to be a debtor, either for failure to prosecute a prior case or due to a willful failure to comply with a previous court order in a prior case, he or she is not afforded the protections of the automatic stay.

Section 109(g) gives no statutory guidance as to whom bears the burden of proving that an individual is qualified to be a debtor under § 109(g). There is a split in authority. Compare Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 415 (8th Cir. 1994) ("The burden of establishing eligibility in bankruptcy lies with the party filing the bankruptcy petition."), with In re Arena, 81 B.R. 851, 852 (Bankr. E.D. Pa. 1988) ("[I]n order to prevail in a motion based upon 11 U.S.C. § 109(g)(1), the moving party bears the burden of showing that the debtor" is ineligible to be a debtor.); see In re DeBerry, No. 97–37885, 1998 WL 34342252, at *3 (Bankr. E.D. Va. Apr. 1, 1998). Regardless, under either approach, this court finds that the Plaintiff was eligible to be a debtor.

STS argues that the Plaintiff was ineligible to be a Debtor under § 109(g)(1) when she filed the Second Bankruptcy Case because the court dismissed her First Bankruptcy Case because she did not properly prosecute it. STS points out that, during the course of the First Bankruptcy Case, the court "issued a notice of deficient filing because [the Plaintiff] had failed to meet the filing requirements." STS's Brief at 13. According to STS's

13

interpretation of the facts, the Plaintiff failed to file these documents and the court dismissed the First Bankruptcy Case because the Plaintiff "failed to appear in proper prosecution" of the case. Id. However, STS's argument is, at best, misguided.

### i.   *The first dismissal order's plain language*

A court order dismissing a case that outlines the basis for dismissal should be taken at face value. "[W]here the plain terms of a court order unambiguously apply . . . they are entitled to their effect." Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009) (citations omitted); see also Hubbard v. Twin Oaks Health & Rehab. Ctr., No. 03-0725, 2004 WL 3643822, at *1, (E.D. Cal. March 8, 2004) ("While vigorous advocacy is a hallmark of our judicial system, misconstruction of the plain language of a court order does not come within that rubric.") Here, the First Bankruptcy Case was not dismissed for the Plaintiff's failure to appear in proper prosecution of her case. The plain language of the First Dismissal Order confirms as much. It reads:

> [I]t appearing to the Court that [the Plaintiff] failed to file certain schedules, statements, or other documents as required by the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules of this Court.
>
> **NOTICE IS FURTHER GIVEN AND IT IS, THEREFORE, ORDERED** that the case shall be and is hereby **DISMISSED.**

In re Houck, No. 11-51141 (Bankr. W.D.N.C. Sept. 30, 2011) (Order Dismissing Case) (hereinafter, "First Dismissal Order"). The First Dismissal Order is a simple form order regularly issued by this

court. The words of the First Dismissal Order are unambiguous: the Debtor failed to file her schedules and statements in compliance with the rules of this court, and her case was dismissed as a result. The Honorable J. Craig Whitley made no mention of any failure "to appear in proper prosecution of the case." Arguably, Judge Whitley could have chosen to bar the Plaintiff from refiling, dismissed the First Bankruptcy Case with prejudice, or even chosen to draft a more detailed order that outlined the problems with the First Bankruptcy Case. He took no such actions. Based on this plain-language reading alone, STS's ineligibility argument under § 109(g) fails. More importantly, this court is not unaccompanied in this supposition. The Fourth Circuit has considered this same issue, in this same case, based on similar, if not the same, arguments from STS, and it agrees.

ii.  _The Fourth Circuit's consideration of 109(g)_

In its July 1 Opinion, the Fourth Circuit rejected STS's argument that the Plaintiff was not eligible to be a debtor under § 109(g). "Inconsistency is the antithesis of the rule of law," and under the law-of-the-case doctrine "the _same_ issue presented a second time in the _same_ case in the _same court_ should lead to the _same result_." LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996). More importantly, under the mandate rule, a "more powerful version of the law of the case doctrine," Invention Submission Corp. v. Dudas, 413 F.3d 411, 414 (4th Cir. 2005), a

bankruptcy court must hew closely to the determinations made by higher courts unless explicitly directed otherwise, In re FirstPay, Inc., 391 F. App'x 259, 266—68 (4th Cir. 2010) (acknowledging the bankruptcy court's obligation under the mandate rule to follow the district court's erroneous conclusions). Here, the Fourth Circuit has already stated that the Plaintiff's failure to submit her schedules and statements was not equivalent to a willful failure to prosecute. The Fourth Circuit explained that:

> [STS] has not shown that the [First Bankruptcy Case] was dismissed because [the Plaintiff] *willfully* failed to abide by the bankruptcy court's orders or to appear in proper prosecution of her case. Indeed, the record shows to the contrary. The bankruptcy court dismissed [the Plaintiff's] first petition . . . because she 'failed to file certain schedules, statements, and other documents.' It made no mention of [the Plaintiff's] failure being *willful. . . .*

Houck, 791 F.3d at 487. The facts, evidence, and legal argument presented by the parties with respect to the Plaintiff's eligibility to be a debtor have not changed since the Fourth Circuit issued the July 1 Opinion. STS repeated, almost verbatim, the same argument in STS's Brief. Thus, the Fourth Circuit has spoken, and this court is bound by its mandate on the issue. This language was not dicta, it was the law of the case and subject to the mandate rule.

Finally, STS's contention that the above Fourth Circuit language is dicta, and therefore not dispositive, is not persuasive. "It is self-evident that characterization of language

in a judicial opinion as *dictum* does not mean that it is legally incorrect." Branch ex. rel. Branch v. Coca-Cola Bottling Co. Consol., 83 F. Supp. 2d 631, 634 (D.S.C. 2000) (citing Fouts v. Md. Cas. Co., 30 F.2d 357, 359 (4th Cir. 1929) ("If these conclusions were dicta, it does not necessarily follow that they were wrong.")) As a general principle, a lower federal court "is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum." Id. at 634-35 (citations omitted); see Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996) ("While these statements are dicta, this court considers itself bound by . . . dicta almost as firmly as by the Court's outright holdings, particularly when the *dicta* is recent and not enfeebled by later statements.").

Even assuming *arguendo* that the Fourth Circuit's analysis was dictum, its words still bear greatly on this court's analysis. Furthermore, classifying the aforementioned language as dicta does not lead to the conclusion that the Fourth Circuit got it wrong. In fact, the Fourth Circuit has, in essence, foreshadowed how it would rule on this issue were it positioned to do so. Neither the facts surrounding this Debtor's eligibility nor the statutes to be applied or the arguments presented have changed since the Fourth Circuit contemplated the Plaintiff's eligibility under § 109(g). Even if dicta, the court does not see any reason why the Fourth Circuit's words would not still be subject to the mandate rule.

Thus, it is just shy of futile for STS to raise this issue once more, in a fleeting hope that this court will read new meaning into the First Dismissal Order. This court concludes that the Plaintiff was eligible to be a debtor when she filed the Second Bankruptcy Case, and therefore, the automatic stay went into effect on December 16, 2011.

## II.   Violation of the Automatic Stay

Once a case is filed and the automatic stay goes into effect, creditors are required to cease all collections activity with respect to property of the bankruptcy estate. "[T]he filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate." Houck, 791 F.3d at 480 (citing 11 U.S.C. § 362(a)). Once in place, the automatic stay "'protects all property of the estate regardless of whether or not notice has been given of the pendency of the case.'" Weatherford v. Timmark (In re Weatherford), 413 B.R. 273, 283 (D.S.C. 2009) (citing McGuffin v. Barman (In re BHB Enter., LLC), No. 97-01795-JW, Adv. Pro. 97-80201, 1997 WL 33344249 at *4 (Bankr. D. S.C. Aug. 27, 1997)). The stay is intended to give "the debtor [the] breathing room necessary to operate and function without harassment or fear of losing property while organizing and implementing a plan for repayment of an overwhelming amount of debt." Highsmith, 542 B.R. at 746.

Section 362(k) of the Bankruptcy Code provides for the recovery of damages by a debtor when a creditor commits a willful violation of the automatic stay. 11 U.S.C. § 362(k)[4]. To recover under § 362(k), a debtor has the burden of showing: that she filed a bankruptcy petition; that she was an individual protected by the automatic stay provision; that the creditor received notice of the petition; that the creditor's actions were in willful violation of the automatic stay; and that the debtor suffered damages. <u>Weatherford</u>, 413 B.R. at 284. A debtor must prove a violation of the automatic stay by a "preponderance of the evidence." <u>Clayton v. King (In re Clayton)</u>, 235 B.R. 801, 806 (Bankr. M.D.N.C. 1998).[5] Having found above that the Plaintiff successfully filed a petition as an eligible debtor under the Bankruptcy Code and the automatic stay went into effect on December 16, 2011, all that remains to explore are the last three elements of § 362(k): (i) notice; (ii) willful violation; and (iii) damages.

    *i.* *Notice*

Although the parties disagree on the timing of STS's notice, there are certain uncontradicted dates and times: (1) the Plaintiff filed the Second Bankruptcy Case on December 16, 2011; (2) STS

---

[4] The court notes that many of the cases relied upon cite to 11 U.S.C. § 362(h), the prior designation given to the stay violation provision of the Bankruptcy Code that today is known as § 362(k).

[5] There is a split in authority among the courts regarding the proper standard of evidence to be used in a § 362(k) action. However, our sister court in the Middle District of North Carolina has found that a "preponderance of the evidence" standard, rather than a "clear and convincing" standard, is appropriate, <u>Clayton</u>, 235 B.R. at 806 n.2, and this court agrees.

conducted the Foreclosure Sale on December 20, 2011 at 12:57 P.M. in technical violation of the automatic stay; (3) STS concedes that Hutchens received a call about the Second Bankruptcy Case at 3:52 P.M. on December 20, 2011; and (4) the Second Bankruptcy Case was dismissed on December 21, 2011. Under these uncontradicted facts, the court concludes that STS was on notice of the Second Bankruptcy Case.

First, a phone call to a party's attorney about a pending bankruptcy case puts the party on notice of the automatic stay, regardless of the intended purpose of the call. It is settled law that "notice to the attorney is notice to the client." Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 303 (4th Cir. 2017). Moreover, "unofficial oral or written notice of a bankruptcy filing is legally sufficient to convey knowledge of the automatic stay." Will v. Ford Motor Credit Co. (In re Will), 303 B.R. 357, 364 (Bankr. N.D. Ill. 2003) (citation omitted); Clayton, 235 B.R. at 808 ("[T]he creditor may be charged with notice of the bankruptcy if it were in possession of sufficient facts to cause a reasonably prudent person to make further inquiry."); Highsmith, 542 B.R. at 747 ("The creditor does not need formal notice of the existence of the bankruptcy to have knowledge of the case .... ").

In this case, the Fourth Circuit has noted that a phone call to Hutchens regarding the Second Bankruptcy Case "more than adequately support[s] [the Plaintiff's] claims [] that she gave

the defendants, including [STS] through its attorneys, notice . . . ." <u>Houck</u>, 791 F.3d at 486. This court agrees that Nationstar's call to Hutchens was notice to STS. The call informed STS of the Second Bankruptcy Case and necessarily the existence of the automatic stay.

### ii. *Willful Violation*

STS's failure to mitigate once it got notice of the Second Bankruptcy Case constituted a willful violation of the automatic stay. When STS conducted the Foreclosure Sale earlier in the day on December 20, 2011, it was in technical violation of the automatic stay. <u>See</u> <u>Clayton</u>, 235 B.R. at 807 ("[A] technical violation [of the automatic stay] occurs when a creditor violates the provisions of § 362(a) *without knowledge* that an active bankruptcy case is pending.")(emphasis added). "[W]hat begins as a technical violation of the stay can become willful because a creditor has an affirmative duty to remedy a stay violation when it learns of the bankruptcy filing." <u>In re Grason</u>, No. 09-71353, 2013 WL 3781766, at *6 (Bankr. C.D. Ill. July 18, 2013); <u>see also</u> <u>Will</u>, 303 B.R. at 364 ("What began as a technical violation of the automatic stay . . . turned into a willful one because a creditor has an affirmative duty to remedy an automatic stay violation without court order when it learns of the existence of a debtor's bankruptcy case . . . ."); <u>Brown v. Joe Addison, Inc. (In re Brown)</u>, 210 B.R. 878, 881 (Bankr. S.D. Ga. 1997); <u>Miller v. Sav.</u>

Bank of Balt. (In re Miller), 10 B.R. 778, 780 (Bankr. D. Md. 1981), aff'd, 22 B.R. 479 (D. Md. 1982); Adams v. Phila. Hous. Auth. (In re Adams), 94 B.R. 838, 851 (Bankr. E.D. Pa. 1989); In re Belcher, 189 B.R. 16, 17—18 (Bankr. S.D. Fla. 1995). A failure to take action can render a technical violation willful. Grason, at *6.

In Grason, the creditor, HSBC Bank, USA, N.A. ("HSBC"), had a lien on real estate (the "Grason Property") owned by Anthony Grason ("Grason"). Grason, 2013 WL 3781766, at *1. Grason filed for bankruptcy on July 8, 2008, and his case was dismissed on December 8, 2008 for failure to provide the Chapter 13 trustee with tax returns. Id. On May 5, 2009, the Grason Property was scheduled to be sold by the sheriff at a foreclosure sale set for 8:30 A.M. Id. Grason filed a second bankruptcy case on May 5, 2009 at 8:37 A.M. Id. HSBC sold the Grason Property on May 5, 2009 but later acknowledged that the sale did not take place before Grason filed his second bankruptcy case. Id. Grason did not allege that he made any effort to notify HSBC of his second filing before the foreclosure sale, and HSBC claimed that it had no knowledge of the case filing when the sale occurred. Id. The bankruptcy court dismissed Grason's second filing on May 21, 2009. Id.

Five days later, the state court held a hearing to confirm the foreclosure sale of the Grason Property. Id. at *6. During this hearing, HSBC first became aware of Grason's second bankruptcy

case and the automatic stay that may have been in place during the foreclosure sale. Id. After learning of the second case, HSBC neither sought relief from stay nor retroactive validation of the foreclosure sale, and the foreclosure sale was ultimately confirmed by the state court. Id. at *2. Grason appealed the orders confirming the sale of the Grason Property on May 5, 2009, arguing that HSBC violated the automatic stay. Id. at *1.

After four years of litigation and two trips to the Illinois Appellate Court, HSBC ultimately filed a motion for relief from stay in the bankruptcy court seeking to retroactively validate its May 5, 2009 foreclosure sale of the Grason Property. Id. at *1—2. HSBC wanted the court to find that no automatic stay took effect because the debtor was ineligible to be a debtor in his second case under § 109(g). Id. at *3. In the alternative, HSBC asked the court to annul the stay because of, among other things, the bad faith nature of Grason's filings. Id. at *7. For almost identical reasons as those in this case, the Grason court found that Grason was eligible to be a debtor under § 109. Id. at *4. It then turned to the question of HSBC's violation of the stay. It found that HSBC's holding of the foreclosure sale itself was a technical violation, because at the time, HSBC had no knowledge of Grason's second case. Id. at *6.

Importantly, the Grason court found that HSBC had a duty to take prompt action to remedy its stay violation once it was put on

notice at the subsequent state court hearing. Id. at *7. Its failure to do so was, in and of itself, a violation of the automatic stay. Id. at *8. The Grason court rebuked: "HSBC was represented in the foreclosure action by a law firm that [did] a significant amount of both foreclosure and bankruptcy work . . . . HSBC and its attorneys [knew] when such a technical violation occur[ed]," they were to seek stay relief and not to ignore the violation and later "seek[] complete absolution." Id. at *7. The court also noted that "[t]he integrity of the automatic stay would be compromised if creditors were free to ignore the complaints of debtors and unilaterally decide not to seek relief after technical violations . . . . Creditors must not be allowed to ignore a stay with impunity." Id. The court concluded:

> Notwithstanding the frustration caused by a last minute bankruptcy filing, litigants, lawyers, and state courts must respect the automatic stay. Here, the automatic stay was not respected. This court will not exercise its discretion to validate that disrespect.

Id. at *8; see also In re Shealy, 90 B.R. 176, 179—80 (Bankr. W.D.N.C. 1988)(holding that while a willful violation of the stay typically requires "intentional or deliberate conduct," where the violation of the stay arguably resulted from a party's inaction, willfulness can be established by showing a "reckless disregard of the § 362 stay" (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126—27 (1985))).

The facts of <u>Grason</u> are eerily similar to the facts of this case. Like Grason, the Plaintiff filed two bankruptcy cases in a short period of time to prevent a foreclosure sale of property. Moreover, both Grason's second case and the Second Bankruptcy Case were filed on the eve of a scheduled foreclosure sale. Neither HSBC nor STS had actual knowledge of the respective pending bankruptcy cases when they conducted the foreclosure sales, and in both cases, the sales took place after the automatic stay went into effect. Initially, both were in technical violation of the stay. HSBC's technical violation became a willful violation once it got notice and failed to act, and the same reasoning renders STS's inaction a willful violation of the stay. It did not matter to the <u>Grason</u> court that Grason's second bankruptcy case had been dismissed shortly after the sale, and the short life-span of the Second Bankruptcy Case does not matter here. STS's technical violation became willful when Hutchens got the 3:52 P.M. phone call and did nothing despite Hutchens' extensive bankruptcy experience and knowledge of the Code. STS chose to not remedy its technical violation, and in fact, STS proceeded with the state court formalities of signing and recording the trustee's deed.

Importantly, STS does not deny that its "practice" after learning of a foreclosure sale in technical violation of the stay is to wait and see if the case is dismissed before taking steps to undo the sale. The court wholeheartedly agrees with the Plaintiff's

contention that this practice is abhorrent. The court is
dumbfounded by the cavalier position that STS has taken regarding
its seemingly obvious stay violation. The essence of STS's "wait-
and-see" approach is flawed and in direct conflict with a litany
of case law. If STS learns of a technical violation, it is
obligated to determine the effect of the stay and remedy its
violation—not wait to see if the case will be dismissed and the
"barrier" of the automatic stay removed. Weatherford, 413 B.R. at
285—6 (noting that a creditor "is obligated to determine the effect
of [a] bankruptcy case" regarding any actions it has taken in
technical violation of the automatic stay before proceeding any
further); see also McMullen v. Sevigny (In re McMullen), 386 F.3d
320, 330 (1st Cir. 2004)("[A] creditor that commits a technical
violation of the automatic stay due to lack of notice, has an
affirmative duty to remedy the violation as soon as practicable
after acquiring actual notice of the stay.").

Further, the fact that STS continued with the sale proceedings
in state court is also evidence of an ongoing stay violation. A
creditor's "retention of an improved position gained by [it] in
violation of the stay is itself a continuing violation of the
stay[.]" Miller, 10 B.R. at 780. The dismissal of a bankruptcy
case does not "revive or validate [a] [sale] otherwise voided by
the automatic stay" and "post dismissal enforcement of a [sale]
voided by the automatic stay is itself a violation of the stay."

Weatherford, 413 B.R. at 286. STS's post-dismissal recordation of the sale and execution of the trustee's deed amount to willful violations of the automatic stay; STS picked up right where it left off as though the Second Bankruptcy Case never existed. STS retained its improved position following the Foreclosure Sale, and its retention thereof amounted to an ongoing violation.

In summary, STS could have come to this court upon learning of the Second Bankruptcy Case and requested an emergency hearing to annul the stay. Instead, it chose to put its head in the sand. STS could have notified the state court clerk of court of this bankruptcy case; it chose to turn a blind eye. STS could have reinitiated the foreclosure sale process; it chose to carry on with a defective sale. The court acknowledges the frustration that STS experienced with the Plaintiff's tactics, jockeying between the state court and this court, but also recognizes the importance of respecting the automatic stay. STS's decision not to act was a willful violation of the automatic stay, and this order should serve as notice to other creditors that they cannot ignore the effects of the stay when it is inconvenient. A finding to the contrary would render the stay meaningless.

### iii. Damages

Turning to the last element necessary for recovery under § 362, the Plaintiff must show STS's willful violation of the automatic stay resulted in an injury to the Plaintiff. At this

time, the amount and extent of injury are not at issue, simply the mere existence of damages. Rather than exhaustively list all the ways in which the Plaintiff could, in fact, be damaged, this court simply defers to the prior discussions of the Fourth Circuit in this case where it acknowledges that the complaint "more than adequately" alleged facts that, if true, would point to injury resulting from a stay violation. In re Houck, 791 F.3d at 485–86. While this court still needs to determine if all of these allegations are true, suffice it to say there were injuries to the Plaintiff. The court will determine the extent of the Plaintiff's damages at a later date.

In summary, upon consideration of all of the evidence, there is no genuine dispute as to any material fact regarding STS's willful violation of the automatic stay, and summary judgment in favor of the Plaintiff is appropriate.

## III.  Sanctions

The Plaintiff's motion for sanctions, filed in conjunction with her cross-motion for summary judgment, seeks sanctions under Federal Rule of Civil Procedure 37(d) because the witness STS produced to testify on its behalf at a deposition, Lawrence C. Miller ("Miller"), was allegedly unprepared. Response to Defendant's Motion for Summery [sic] Judgment, Cross-Motion for Summary Judgment, and Motion for Sanctions, at 9—15, Houck v. Substitute Trustee Servs., Inc., no. 15–05028 (Bankr. W.D.N.C.

Nov. 9, 2018), ECF 66.[6] Specifically, the Plaintiff argues that
Miller did not have knowledge of the policies and procedures of
STS during the relevant factual period of this case. Id. at 14.
Further, the Plaintiff contends that STS failed to properly prepare
the deponent, pointing out that Miller had "not seen the issued
[sic] for which he was to be prepared for the deposition until
moments before the deposition." Id. at 11. The Plaintiff maintains
that when a deposition witness is not prepared, "'a panoply of
sanctions'" are appropriate pursuant to Rule 37. Id. at 15 (quoting
United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996)).

In response, STS argues that on the day of Miller's
deposition, the Hutchens Law Firm offered Lanée Borsman as its
witness, and she was deposed prior to Miller. Response to
Plainitff's [sic] Motion for Sanctions, at 3, Houck v. Substitute
Trustee Servs., Inc., no. 15-05028 (Bankr. W.D.N.C. Nov. 9, 2018),
ECF 63. STS maintains that the parties engaged in "dialogue to set
the 'ground rules' for Mr. Miller's deposition" at the beginning
of the deposition, and even then, Plaintiff's counsel admitted
that he "probably should have asked [Lanée Borsman] questions he
intended for [Miller]." Id. STS says that it "stipulated to answers
when [Miller] lacked knowledge" and offered to reopen Lanée

---

[6] The Plaintiff's original response to the Defendant's Motion for Summary
Judgment and cross-motion for summary judgment was sealed by the court pursuant
to its October 10, 2018 protective order. See Response to Defendant's Motion
for Summery [sic] Judgment, Cross-Motion for Summary Judgment, and Motion for
Sanctions, Houck v. Substitute Trustee Servs., Inc., no. 15-05028 (Bankr.
W.D.N.C. Nov. 9, 2018), ECF 54.

Borsman's deposition to allow her to testify as to Hutchens'
business records. Id. STS says Plaintiff's counsel indicated he
would submit written questions for any gaps in the deposition, but
it never received any supplemental written questions. Id. at 4. In
short, STS maintains that it acted amicably, and that it was blind-
sided by the Plaintiff's motion for sanctions. Id.

Based on the arguments outlined above, the court denies the
Plaintiff's motion for sanctions. Apparently, there was confusion
as to the scope of Miller's deposition and, specifically, the scope
of his knowledge about Hutchens and its records. The court is
satisfied with STS's showing of its efforts to supplement and cure
any deficiencies with this witness. Thus, the motion for sanctions
is denied.

## CONCLUSION

For all of the reasons stated above, this court grants the
Plaintiff's cross-motion for summary judgment but denies the
Plaintiff's motion for sanctions. The court concludes that the
Debtor was eligible to be a debtor under § 109(g) when she filed
the Second Bankruptcy Case, and that STS was in technical violation
of the automatic stay when it conducted the Houck Foreclosure Sale.
STS's technical violation of the automatic stay turned into a
willful violation, which resulted in injury to the Plaintiff, when
STS took no action to restore the status quo after learning about
the Plaintiff's active bankruptcy case on the afternoon of

December 20, 2011. STS's blatant disregard for the automatic stay is unacceptable and should not be emulated by other members of the creditors' bar. Finally, STS's actions regarding its deposition witness were not sanctionable.

**SO ORDERED.**

This Order has been signed                              United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.